May it please the Court, I'm Scott Nelson, representing Petitioners Public Citizen, the Public Utility Law Project of New York, and the Colorado Office of Consumer Counsel in No. 0874443, and also advocating the position taken by the Attorney General Petitioners in No. 0874439, who have joined in our brief. In Morgan Stanley, the Supreme Court explicitly recognized that the lawfulness of FERC's market-based rate system is an unresolved question. This challenge to the agency's market-based rate rulemaking squarely presents that question. FERC's market-based rate rulemaking is unlawful for two fundamental reasons. First, it departs from the Federal Power Act's key requirement that all changes in rates be filed 60 days in advance, absent a waiver meeting requirements that FERC's market-based rates rule cannot ever comply with. And second, substantively, the market-based rate rule fails to ensure that rates are which is the fundamental substantive requirement of the Federal Power Act. I'd like to start with the issue of the filing of changes in rates. Section 205D of the Federal Power Act, or 824DD in 16 U.S. Code, requires that all changes in rates or charges by a utility be filed 60 days in advance unless FERC issues an order that specifies the changes to be made and when they shall go into effect, and FERC may issue such an order only for good cause. Under the market-based rate system, this fundamental requirement, which the Supreme Court in the recent decision in NRG, the Maine Public Utilities Commission, called the file all new rates requirement, it's never complied with because once a company receives what is referred to as a market-based rate tariff, which doesn't specify any rates, but simply says the rates shall be entered into between the buyer and the seller as determined by market transactions. Once that tariff is issued, rates constantly change and they are never filed 60 days in advance, nor does FERC ever issue an order waiving the 60-day filing ruling requirement and specifying the change in rates and when it shall go into effect. Instead, rates simply move with the markets. There's no advanced filing of them, and there are after-the-fact reporting requirements. In this Court's decision in Lockyer, the Court did say that after-the-fact reporting requirements could comply with the separate filing requirement of section 205C, but the Court did not address the express statutory requirement in 205D that changes in rates be filed in advance. FERC's rationale. If we were to adopt that position, wouldn't that be inconsistent with the overall tone of Lockyer? Well, the overall tone of Lockyer was to say that in response to the challenges raised in that case to the practices at issue there, that the Court did not find FERC's system unlawful for the reasons advanced. But, you know, in view of the precedents of it. Lockyer's a pretty strong statement in upholding the market-based rates system or scheme. Well, I mean, as this Court has said, you know, its precedents, it treats as precedents issues that its opinions have dealt with. And you can actually search the Lockyer opinion in vain for any citation to or discussion of the section 205D requirement of advanced filing of rates. So you would want us to say that Lockyer just doesn't apply, just never addressed this argument. And we as a three-judge panel could just simply put it aside and adopt your arguments and strike down the market-based rates system as you have on the arguments that you're making, the more specific arguments that you're making in this case. Yes, that's correct, Judge Pias. As to the argument that the market-based rates rule does not comply with section 205D, Lockyer contains no holding. So what would your position be then? What has to be filed each time that there's a price, a market-based price adjustment by the generator or by the supplier, that that would then have to be filed 60 days in advance? Sixty days in advance unless there's a waiver meeting the 205D requirement, and that waiver must actually specify the exact change to be made and state when it shall go into effect. Yes, that's right, Your Honor. That's the express command of the statute. And, you know, FERC says, well, this would render our issuance of a market-based rate tariff pointless, which may be the case, but the fact of the matter is that they're compatible with something that an agency wants to do outside of the confines of the statutory system. Counsel, it's Judge Gould with a question, if I may. This isn't the technical issue, but I understand you want us, without an en banc court, to distinguish Lockyer on an issue not discussed there. Okay, let's assume we can do that. Does the record as it stands here now, does it show what the impact would be to consumers of putting aside market-based rates and always requiring an advance and approval with filings 60 days before the effective rate? No, Judge Gould. There actually is no, as I'm sure you're probably aware, there's no factual record on that point. And, you know, in the administrative record and in the orders at issue, FERC itself doesn't address the impact in any empirical way of market-based rates on consumers. So what we're really dealing with is, I think, a situation where it's somewhat speculative what the impact ultimately of this situation as a practical matter is. So it's a statutory interpretation issue on which we have no factual record that tells us whether one interpretation or another is to the benefit of consumers. That's correct. And, you know, the answer to that is whether compliance with the statute is to the benefit of consumers or to the benefit of society in general is not an issue. That's up to Congress. I guess it's up to Congress to decide what's to the benefit of whomever. That's exactly right. But it is difficult to make a statutory interpretation in general if it's wholly in the abstract. Well, I mean, I understand that point, but I also think that that's very much what FERC has done itself. It has taken the abstract view, and it has disclaimed any obligation to advance any empirical support for it in this rulemaking that market-based rates are somehow beneficial and will yield, quote, just and reasonable rates based solely on the tautology that market-based rates are by definition just and reasonable. But, you know, even if you look at what Lockyer said about the second question, whether market-based rates comply with the statutory requirement that rates be just and reasonable, it said that market-based rates can be just and reasonable, citing precedents saying that they can be just and reasonable if they're based on a finding that markets are competitive, which FERC has expressly disclaimed making here. If FERC engages in after-the-fact review of the rates to ensure that they're just and reasonable, but if you look at how FERC defends what it's doing here, you find that what it looks at after the fact is the same thing it looks at before the fact, whether it can find market power. And it also looks at whether there are violations of its conduct rules. But beyond that, it has no standard other than the marketplace to determine whether the actual rates are just and reasonable. And that's exactly what Lockyer, following decisions such as the Supreme Court's decision in Federal Power Commission v. Texaco, said the agency can't do, is just rely on the presumption that in a fairly operating market, rates will be just and reasonable. I want to go back, though, again to the next point. I understand your 205d argument. You're saying that where it says notice required for rates, that the term rate means the specific price, not the fact that it's a market-based rate that once they file and get approval from FERC that they can apply a market-based rate, then the specific prices are what are meant by the statute. That's right. And that leads to the point that I was just going to get to. What FERC says, as its justification, its attempt to square what it's doing with the statute, is that the only change in rates that occurs in the market-based rate system is the change to a market-based rate. And thereafter, the actual amounts that somebody pays, you know, x cents or dollars per kilowatt hour are not changes in rates. And, you know, the difficulty with that is this Court has said, as has the Supreme Court, this Court most recently in the Peck case, that rate is a term with a common meaning. And what it means is how much you pay for something. And to suggest that rates never change under market-based rates is just to torture the English language beyond what it can bear. And, in fact, that even is contrary to this Court's decision in Locke here. Because this Court said in Locke here that a market-based rate tariff, without information about what the actual rate's being charged, does not set for the rate. And therefore, the Court, the only way the Court found that the system complied with the section 824C requirement of filing of rates was to say that under 824C, the after-the-fact filing of the amounts paid completed the filing of the rates. But that doesn't work with 824D, where the rate has to be filed in advance. OK, we're going to run out of time. Yeah, counsel, I have one quick question for you. Does Locke here resolve the just and reasonable issue that does Locke here hold, that market-based rates are just and reasonable? In which case, our panel couldn't alter that. That way, you'd have to go and bank on that, assuming we could go to your filing time issue. I think not, Judge Gould. I think what Locke here held was that market-based rates can be just and reasonable, and that in that case, based on what was represented by FERC as to how the system would operate, the Court could not find that they were not reasonable. But that this rulemaking record and what the FERC has said in it shows that the necessary components of that Locke here relied on to find that it couldn't hold that market based rates were unreasonable there, those requirements are not satisfied here because FERC has disclaimed making any finding that markets are competitive, which is one of the requirements that this Court mentioned in Locke here for market-based rates to be just and reasonable. And also, critically, Locke here said that the reasonableness of a market-based rate would depend on FERC's review of the rates, at least after the fact, to determine that they are just and reasonable. And what this record reveals, and I think it's some study of what FERC says in defense of reasonableness at excerpts of the record, pages 205 to 208, which are the parts of Order 697A that address this issue, is that after the fact, it's not actually looking at the rates to apply any yardstick to whether they're just and reasonable. It's just looking to see if there's market power or market misbehavior. And I think Locke here expressly says that FERC can't do that. It has to retain authority to review the reasonableness and justice of the rates themselves, and FERC isn't doing that here. If there are no further questions at this time, I'd like to reserve the remainder of my time for rebuttal. Roberts. May it please the Court, Robert Solomon for the commission. I plan to cede 5 minutes of my time to counsel for interveners in support of respondent. Starting immediately with the relevance of the Lockyer decision, the commission believes that it is now doing exactly what this Court instructed the commission to do in Lockyer, which is to provide a full and complete scheme of regulation for the protection of consumers. Unfortunately, the commission wasn't doing that particularly well 10 years ago during the energy crisis. What the Court found in the Lockyer decision is that we simply didn't have the type of after-the-fact monitoring and oversight and enforcement of competitive markets of the Federal Power Act, and to differentiate the commission's market-based rate scheme from those schemes that were invalidated by the Supreme Court in the Maislin case and the MCI case. Well, could the counsel, in your argument, because it's very critical to Lockyer, counsel said in his argument that there is, in fact, no post-period review that really makes, certainly as articulated by the commission, that I can fully understand anyway, as to that the rates  It's an examination, as counsel said, of basically the market, but it doesn't tie it to the market power. It doesn't explain how it's going to determine that those rates were just and reasonable. Right. We understand the argument of petitioners, and we very much disagree. The commission does, in fact, carefully review everything that is presented, not just simply the before-the-fact request for market-based rate authorization, which is a very seller-specific inquiry, but also with respect to the electronic quarterly reports, the actual precise calculated rates. The commission does look at those rates. The commission does look at the updates. The commission does look very carefully at the status changes, and in particular Well, how does that determine whether the, under the, as I understand the cost plus pre-approval approach that's the historic way, that you're looking at the books and records and whatever of the utility, and you're balancing whether, you know, is this fair return to investors and also fair just as to the consumers. What's the equivalency looking to whether the rates in the market are, in fact, meeting those objectives? Well, the standard is always just and reasonable. That is the statutory standard. I know that. That is the only thing. The question is how. Well, the commission believes that the market-based rate program is no less objective than the There's nothing particularly objective about cost-based rate making, which requires the determination of a reasonable profit, a reasonable rate of return on invested capital. The courts have always described the just and reasonable process as being more of an art than a science. We do note that the Morgan Stanley decision of the Supreme Court in 2008 does provide some help in determining what to look for in just and reasonable rates. Admittedly, as Mr. Nelson indicated, the Supreme Court did not address the overall validity of the market-based rate program, but the Supreme Court did address what to look for with respect to just and reasonable rates in the contract context. The Supreme Court said under the Federal Power Act, which is drafted differently than the ICC and the FCC statutes that were before the Supreme Court in Maislin and MCI, that there is a special place for bilateral contracts in addition to unilateral tariffs. And what the Supreme Court said is when you have a contract, the commission can presume – indeed, the commission must presume – that a rate that results from a willing buyer, a willing seller of approximately equal bargaining strength, engaging in good-faith, arm's-length negotiation is just and reasonable. That is just as objective, if not more objective, than any other standard the commission has ever confronted in 70-plus years of regulation under the Federal Power Act. Okay, well, let me sharpen my question a little bit. And this is a very difficult area, I understand, so I'm asking this for education. But as I understand, you could have in a particular market, you can have, say, a dominant utility, which does have market power, therefore can't come in under the market-based rate. So it'll be setting its rate – its rates will be set under the cost-plus approach, that's correct? Mm-hmm, that's correct. Okay, so then you'll have smaller utilities coming in, or providers, that don't have market power. So basically, they will then be competing in light of the overhang of the dominant supplier, presumably. They'll be trying to undercut the rates of the – I assume, if it's all just price, so there may be other factors, service, and so on and so forth. But in the economic dynamic, what is it that is inherent in the market, or the competitive market, that is going to assure that the rates that are being charged by these market-based rate competitors are, in fact, just and reasonable? Presumably, the commission has, with the dominant cost-plus one, taken a look at fair return and so on and so forth. Is there anything in the analysis that will look at the – say you have three of these market-based rate competitors, whether their ratio of costs to rates charged are reasonable? I mean, maybe they get an exorbitant return on investment that you wouldn't allow for the cost-plus – or maybe that's okay. I'm just trying to understand how, in the analysis, the post-facto analysis, this competition actually produces a rate that's just and reasonable. Well, the commission, as well as any would-be complainant, consumers, competitors of the market-based sellers, can look at the actual price figures that are reported and determine whether, in fact, there is some type of anomaly, some type of anomalous results that would suggest that, in fact, the rate being negotiated and executed is not appropriately the result of a competitive market, but rather the result of some type of differential in size or strength or negotiating posture. And let me go to the example that Petitioner uses in Petitioner's brief, which is the Dungeness Crab example on page 33, which is something the commission certainly would be looking for. Petitioner posits the example that the price goes up from $24 one day to over $3,000 the next day. The would-be diner is told the next day that the price is the same as the price charged the previous day. That would never fly before the commission. That is not a market-based rate, even though the restaurant might consider the $3,000 price to be a market price. In the commission's belief, and we believe that this is consistent with the language of the Supreme Court and NRG and Morgan Stanley and all of the earlier cases, that you don't have a market price unless there is some type of fair, good-faith negotiation between a willing buyer and a willing seller. When you have the supplier saying the price is the same as yesterday, that is not a market price. That is out-and-out fraud. That is a material misrepresentation of fact that the commission now has the ability to confront under the new authority that the Congress has provided, the FERC, in 2005. And on that point, since the focus is on consumer protection, I want to emphasize that should the commission find anomalous results, should the commission find something that is not suggestive of equal bargaining strength or good-faith negotiations, as this Court found in the Lockyer decision, in the second half of the Lockyer decision, the commission has full remedial authority to do whatever it needs to do to protect consumers. This can be the prospective lifting of market-based rate authority. But this can be full retroactive refunds. This can be the full disgorgement of profits. The commission now has civil penalty authority over the type of seller in the Dungeness crab example. And we can now impose a civil penalty of $1 million per day per violation. So the commission has very significant, very strong remedial tools of the type that it didn't have 10 years ago and that it now has. The focus of Petitioner's argument is on the change in rate under 824DD. And Petitioner is arguing that this Court in Lockyer didn't address that issue in 2004. We believe the Lockyer decision, if not controlling, is certainly very persuasive. Yes, the Lockyer decision does not specifically have a citation to D. But indeed, it only has one citation to C, and that's in reference to the adequacy of the commission's after-the-fact reporting requirements. We believe that the argument made by California in 2004 was more general than just an attack on C. The argument was that all of the rates charged in California during the energy crisis, whether they were initial rates or changed rates, violated the filing requirements of the Federal Power Act. The filing requirements are those found in C and D. These are not two distinct statutory sections. These are not two distinct arguments. C and D are companion sections. C conveys the general rule that all rates need to be filed. D conveys the more specific rule that if there is a change in rates, those rates generally have to be filed in advance. But C and D have to be construed together. The before-the-fact market-based rate authorization doesn't have any relevance or legality without the after-the-fact reporting of particular rates. The after-the-fact reporting of particular rates don't have any particular relevance without an understanding of the before-the-fact authorization. I think where Petitioner's argument fails is that it focuses precisely on one step. It focuses only on the before-the-fact step. The Commission's approach is a two-phase approach. We believe that the two-step approach is consistent with what this Court said in Lockyer. The Court said that the after-the-fact reporting requirements are an integral component of the before-the-fact market-based rate authorization. The change in rate is really a two-step process brought about by the initial filing of the market-based rate tariff and the after-the-fact reporting of the particular rate. And I do want to focus on the precise language that the Commission used. The Commission, in responding to Petitioner's 824DD argument, indicated that the filing of the tariff initiates the rate change. The Commission used the word initiate several times. It doesn't complete the rate change process. The Commission believes that the rate change is a two-step process which is entirely consistent with the discretion that the Commission has under C and under D. The Commission has discretion under C to adopt filing requirements in whatever time and form the Commission so desires. The Commission has discretion under D to grant a good cause waiver. Everything has to be on file, but everything does not have to be on file 60 days in advance if the Commission grants waiver under the circumstances. The Petitioners argue that the Commission has never relied upon its Section D discretion. And, of course, most of the focus was on C. But the Commission did explain on page 215 of the excerpts, paragraph 456, that it believes that its two-phase approach is entirely consistent with the flexibility demonstrated in the statute concerning not just simply the Agency's time and form discretion, but the Commission's good faith waiver discretion. Counsel, Judge Gould, if I could interject a question, and I realize it might not control statutory interpretation, but does the record before us from the Commission show any data on the issue of whether the market-based rate system, overall or in the end, will lead to lower or higher prices for consumers? In other words, did the Commission hold hearings or take evidence on that issue? No, the Commission did not. This is a rulemaking proceeding, and the issue concerning the legitimacy, the value of the market-based rate program, it's a facial challenge based upon the consistency of the program with the statute. So there is a legal authority section in the rulemaking that addresses Petitioners' objections to the legitimacy of the program. But since the objections are based upon the language of the statute, since the objections are based on statutory construction, there's no empirical evidence to back up the Commission's legal authority. I do want to add that there is a basis for the Commission's belief, and the fundamental basis is the type of technological and regulatory restructuring of the type that the Supreme Court recognized in the Morgan Stanley decision. And in particular, the Commission has to recognize and has to be assured that suppliers have access to markets. And the Commission undertook two very significant regulatory improvements in the last 20 years, recognized by the Supreme Court. All transmission providers now have to provide open access transmission service to allow any seller, whether an affiliate or non-affiliate, to reach markets. And now the Commission has fostered the development of regional transmission organizations and independent system operators to make sure that the bottleneck control over the transmission grid is not employed in any manner to benefit or to favor any one supplier. Finally, as to Congress in 2005, I just want to briefly mention that the Commission is not arguing, is not arguing at all, that there is any type of implicit repeal of the filing requirements. The Commission believes that those filing requirements, the just and reasonable requirements, are as valid now as they have ever been. All we are arguing very simply is that Congress understood the program that is in effect and that the Congress intended to improve upon and to enhance the Commission's program by giving us additional regulatory oversight enforcement tools. Thank you. Thank you very much. May it please the Court, Ashley Parrish for the interveners in support of the Commission. What I'd like to do is three things. First, start with Judge Gould's question about the question of the fact record, because I think that's very helpful. Judge Fischer, I think that goes directly into your questions as to why this is complex and why, in the posture of this case, you don't need to get into those complexities, but the complexities, to the extent you look at them, all go in favor of the Commission. And finally, I think a number of Judges, Judge Paez, I think you also got to this, but Judge Fischer, you got specifically as to whether rate has to mean price, and I'd like to address that as well. So very quickly, Judge Gould, you asked the question about whether or not there needs to be facts in the record and whether the Commission needs to do fact finding. Three points, Your Honor. First, this is a facial challenge, which means that by definition it's looking at the statute on its face and how it's interpreted, not looking at facts. And you told us that. I'm sorry? Counsel for the Commission just told us that. But, Your Honor, I was going to emphasize the point that if you take a look in our brief, what we emphasize on this is that an as-applied challenge is the appropriate context for raising these complex issues, Judge Fischer, that you are raising, because that's particularly the context that in Locke here itself, you can see that there's a difference between the first part of the opinion, which looks at We know that. Okay. So go ahead. Okay. Thank you, Your Honor. The second point I was going to make relating to that is that this is, of course, Chevron, and so the burden is very high on the petitioner here, not only to show that they've got the best interpretation of the statute, but the Commission's is actually unreasonable. They haven't satisfied that burden at all. And third, if they do want to bring facts into the record, it's their burden to actually plead those facts, and they haven't proved that. Judge Fischer, you asked the question about whether rate must mean price, and with respect, Your Honor, if you take a look all the way back to 2004, you'll see that this Court's decisions consistently have consistently held that a market-based rate tariff is a filed rate, and that's because it's rejected the argument, not only in Locke here, but also in the filed rate cases, like the D.C. Circuit, that it doesn't have to mean a specific price. It can be something else. And since the 1970s, the Commission has had a formula rate, and a formula rate, when it is applied, neither the Commission nor the public knows precisely what price is charged until it actually is charged, because the formula depends on indices that change quickly over time. And then last, Your Honor, I wanted to talk to the point about if you actually do take a look at the monitoring here, and all the issues that were raised in Locke here, the Commission has done more than what Locke here thought was needed in that case. It's gone way beyond that. And as a matter of fact, from my client's perspective, if the Court was not to reaffirm Locke here, and reaffirm the D.C. Circuit's opinion, and actually reject the petition here, the outcome for the markets is impossible to understate. I mean, it really is the case that there are thousands of markets, thousands of parties across the country that rely on this market-based rate authority, and this has been in place for two decades with great success for consumers. And Judge Gould, if there was a record, and it was properly presented by petitioners, the record would clearly support the fact that the market-based rate regime has been a big plus for consumers. With that, Your Honors, I thank you for your time, unless you have any other questions. Thank you. Thank you. Thank you. I'd like to begin with the question of 205D and, first, whether Locke here addressed it. The problem is not just that Locke here didn't cite that particular statutory provision. It's that nothing in Locke here even talked about the question of compliance of the market-based rate regime with the filing requirements applicable to changes in rates. So it's not merely a failure to cite. It's a failure to address that issue in any respect. And further, the — on the 205D point, it has to be emphasized that what the Commission has said is not that this is a two-stage process. What it said is this. Under the market-based rate program, and I'm quoting from excerpts of Record 215, paragraph 456 of the — of the rehearing order. Under the market-based rate program, a rate change is initiated when a — when a seller applies for authorization of market-based rate pricing, not when it subsequently enters into negotiated rates, as interpreted by consumer advocates. In other words — and note also that the Commission there uses rates to describe the actual price negotiated in the market-based rate transaction, thus confirming that ordinary English usage really can't get around the fact that the rate is what is actually paid and negotiated. It's not simply the authorization in the — in the market-based rate tariff. As to the Commission's reliance on the waiver authority under 205D, the Commission has referred to the requirement of good cause in 205D, but neglects that that's not the only condition of a waiver under 205D. Critically, it must take place in an order specifying the changes to be made and the time when they shall take effect. That's the only circumstance under which the Commission can waive the 60-day advanced filing. If it issues a — Counsel, how do you read the opening clause in 824DD, unless the Commission otherwise orders? That — that unless the Commission otherwise orders refers to the — the last sentence, which specifies how the Commission otherwise orders. For good cause shown may allow changes to be — take effect without requiring the 60 days' notice by an order specifying the changes so to be made. So it's — you read those two sentences in the statute together, the first refers to the last. And there's no question that the — the Commission's orders fail to comply with that. As to the justness and reasonableness of the rates overall, if you — if you look at the — the analysis at pages 205 to 208 of the excerpts of record where Firk sets this out, you see that although Firk acknowledges that a range of reasonableness of rates is one that is neither less than compensatory to the seller nor excessive to the consumer, all it really looks at to examine whether the rates meet those requirements is whether there's evidence of market power by the individual seller and whether there's evidence of market misconduct, violation of conduct rules. Absent those things, Firk, in this rule, simply presumes that the market rate is just and reasonable. And — and that is what Lockyer specifically says it cannot do. My time has expired, so unless there are any further questions, I'll submit. I think we're okay. Thank you both. Thank you. Thank you all three, actually. Thank you. We appreciate it. It's a very interesting case. And we had energy enough to get through the day. With that, we will stand in adjournment until tomorrow, and we thank counsel and the case is submitted. Thank you. Thank you.
judges: Fisher, Gould, Paez